**UNITED STATED DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

RANDOLPH SEWELL, and DAPHNE
SEWELL, individually and on behalf
of all others similarly situated,

Case No.2:07-cv-00343-JES-SPC

      Plaintiffs,

v.

D'ALESSANDRO & WOODYARD,
INC., a Florida for-profit corporation;
GATES, D'ALESSANDRO & WOODYARD,
LLC, a Florida limited liability company;
K. HOVNANIAN FIRST HOMES, L.L.C.,
a New Jersey limited liability company,
FIRST HOME BUILDERS OF FLORIDA,
a Florida general partnership; FIRST HOME
BUILDERS OF FLORIDA I, LLC, a Florida
limited liability company; FRANK
D'ALESSANDRO, an individual;
SAMIR CABRERA, an individual; and
HONORA KREITNER, an individual,

      Defendants.
_____/

**PLAINTIFFS' RESPONSE TO GATES, D'ALESSANDRO & WOODYARD, LLC'S**
**MOTION FOR SANCTIONS IN ACCORDANCE WITH FED. R. CIV. P. 11**

      Plaintiffs, RANDOLPH SEWELL and DAPHNE SEWELL, by and through their undersigned counsel and pursuant to Fed. R. Civ. P. 11, respectfully submit this response in opposition to Defendant Gates, D'Alessandro & Woodyard, LLC's (hereinafter, "GDW") "*Motion for Sanctions In Accordance With F.R.C.P. 11*," dated July 31, 2007 [D.E. 44], and state as follows:

**INTRODUCTION**

      GDW's motion for sanctions under Rule 11 is both premature and meritless. Despite Rule 11's requirement that a motion for sanctions not be filed until *after* 21 days from the date of service

have elapsed, GDW filed its motion *on*, rather than *after*, the 21st day following service of the motion, and without taking into account the "3 days" that are tacked on for service by regular mail. GDW's attempted service of its Rule 11 motion by "e-mail" does not start the "21-day" clock since the undersigned counsel never consented to being served by e-mail, *see* Fed. R. Civ. P. 5(b)(2)(D), and, even if such service were proper, the motion was still filed *on*, rather than *after*, the 21st day.

In addition to filing its Rule 11 motion prematurely, GDW is improperly using its Rule 11 motion to test the "sufficiency" of the Complaint. This is highlighted by its argument that Plaintiffs' allegation of successor liability "is ***insufficient*** and general and does not, in itself, provide enough information upon which to predicate liability." (GDW's Motion, at p. 4). The Advisory Committee Notes to Rule 11 clearly state that "Rule 11 motions . . . should not be used to test the sufficiency or efficacy of allegations in the pleadings; *other motions are available for those purposes*." Fed. R. Civ. P. 11 Advisory Committee's Note (1993 Amendments). Here, GDW filed its Rule 11 motion prior to filing a Rule 12(b)(6) motion, and before there has even been any court order on its motion.

Further, as will be explained below, there is no merit to GDW's Rule 11 motion. Plaintiffs' allegations of "successor liability" against GDW are amply supported by statements contained in GDW's *own* press releases and website announcing that D'Alessandro & Woodyard, Inc. ("D&W") has been "merged" into GDW, thereby subjecting GDW to successor liability under Florida law (which recognizes a successor's liability where there has been a "de facto" merger). The mere fact that the parties structured the transaction as an "asset purchase" (with no *express* assumption of liabilities) does not automatically insulate GDW from successor liability. GDW's repeated public characterization of the supposed asset purchase as a "*merger*" provided a sufficient factual basis for Plaintiffs' allegation that GDW is the "successor" to D&W under Florida law.

CASE NO. 2:07-cv-00343-JES-SPC

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs have asserted claims under the federal securities laws and the Interstate Land Sales Full Disclosure Act against D&W and its successor, GDW, in connection with D&W's promotion and sale of real estate investment opportunities to Plaintiffs and other class members. The Complaint alleges that, throughout 2005, D&W fraudulently induced the Sewells and other class members to invest in real estate investment opportunities that a local area builder, First Home Builders of Florida, had on the market for sale in Cape Coral and Lehigh Acres, Florida. The offering document which D&W used to solicit investors guaranteed the Sewells and other class members a 14% annual rate of return based upon the leasing and re-sale of the homes to third parties, which would be achieved solely through the joint efforts of D&W and its affiliates.

The representations and disclosures made by D&W--and which are discussed at length in the Complaint--were materially and knowingly false and misleading at the time they were made. By reason of the foregoing, Plaintiffs have asserted the following causes of action against D&W: (1) violation of Section 12(a)(2) of the Securities Act of 1933 (Count I), (2) violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder (Count III); (3) fraud in violation of Section 1703(a)(2) of the Interstate Land Sales Full Disclosure Act (Count V); (4) breach of contract (Count VI); (5) breach of the duty of good faith and fair dealing (Count VII); and (6) violation of Florida's Deceptive and Unfair Trade Practices Act (Count VII).

Although the actionable misrepresentations were made by *D&W* (and other defendants), Plaintiffs have also named *GDW* as a defendant based upon principles of "successor liability." On July 28, 2006, D&W "merged" with another prominent real estate firm, Gates McVey, to form a new entity called "Gates, D'Alessandro & Woodyard, LLC," referred to herein as GDW.

CASE NO. 2:07-cv-00343-JES-SPC

In the press release announcing the merger (attached as Exhibit "A" hereto), GDW stated that the "the *merger* is believed to be the largest of its kind in Southwest Florida history." (Ex. A, p. 1). The July 28th press release makes four references to the fact that the transaction was a "merger."

GDW issued two additional press releases describing the combination of Gates McVey and D&W as a "merger." In another press release dated July 28, 2006, entitled "*Southwest Florida Growth Goliath Created--$1 Billion Yearly Revenue Expected After Merger*" [Exhibit "B" hereto], GDW describes the transaction between the two companies as a "*merger*." (Ex. B, at p. 1). D&W's principal, Frank D'Alessandro, is also quoted in the press release as saying that "[w]e have *merged* two companies that offered different services to the same clientele." (*Id.*). This press release similarly makes four references to the fact that the companies have "merged."

On July 27, 2006, Gates McVey and GDW issued a press release on PR Newswire (*see* Exhibit "C") in which it announced the "*merging*" of their companies effective immediately. According to the press release, "the *merger* combines Florida's leading commercial construction, development and real estate services company with Southwest Florida's largest commercial realtor, resulting in combined transaction values of $1 million, based on 2006 projections." (Ex. C, at p. 1) (emphasis supplied). The press release further states that "the new company will operate under the name Gates, D'Alessandro & Woodyard, LLC and will employ all [D&W] employees." (*Id.*). Todd Gates, the President and CEO of Gates McVey, is quoted in the press release as stating that "[w]e are excited about the *merger* and delighted to join forces with such a regional powerhouse in commercial real estate." (*Id.*) (emphasis supplied). Similarly, one of D&W's principals, Tom Woodyard, is quoted in the press release as stating that "[b]asically, we *merged* to meet the needs of our clients in this fast changing real estate industry." (*Id.*).

CASE NO. 2:07-cv-00343-JES-SPC

## ARGUMENT

**A.      Standard of Review**

Rule 11 sanctions are viewed by courts as an "**extraordinary**" and "**drastic**" remedy, which should be "**reserved for extreme cases of misconduct**." *See, e.g.*, *Conn v. CSO Borjorquez*, 967 F.2d 1418, 1421 (2d Cir. 1992) ("Rule 11 is an extraordinary remedy, one to be exercised with extreme caution."); *Goldblatt v. Englander Communications, L.L.C.*, 2007 WL 148699, at *7 (S.D.N.Y. Jan. 22, 2007) (Rule 11 sanctions "are reserved for extreme cases of misconduct."); *Abra Constr. Corp. v. Greco*, 230 F.R.D. 385, 386 (S.D.N.Y. 2005) (stating that Rule 11 sanctions "are a drastic remedy."). As one federal appellate court has explained, "Rule 11 is targeted at situations 'where it is patently clear that a claim has **absolutely no chance of success** under existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands.'" *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (emphasis supplied). Because Rule 11 sanctions "have significant impact beyond the merits of the individual case and can affect the reputation and creativity of counsel, the court must exercise caution in deciding when and in what amount they are warranted." *Dr. R.C. Samantha Roy Institute of Science & Technology, Inc. v. Lee Enterprises, Inc.*, 2006 WL 3692361, at * 2 (E.D. Wis. Aug. 2, 2006).

The Eleventh Circuit mandates a two-step inquiry for Rule 11 motions. First, the Court must determine whether the party's claims are "***objectively frivolous***" in view of the facts or law. *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996); *Boler v. Space Gateway Support Co.*, 290 F. Supp. 2d 1272, 1280 (M.D. Fla. 2002) (citing *Worldwide Primates*, 87 F.3d at 1254). Second, if the answer to the first question is "yes," the Court must then determine "whether the person who signed the pleading should have been aware that they were frivolous; that is,

5

whether he would have been aware of the frivolousness if he had made a "***reasonable inquiry***." *Id.*[1] Relevant factors into the "reasonableness" of the inquiry include whether the claim was based upon a plausible view of the law and the extent to which factual development requires discovery. *Id.* at 1281 (citing *Jones v. Intern'l Riding Helmets, Ltd.*, 49 F.3d 692 (11th Cir. 1995)).[2] Because Rule 11 is only violated if the paper is "signed in violation of this rule," the Court's inquiry focuses "only on the merits of the pleading from facts known or available to the attorney ***at the time of filing***." *Id.*[3] In evaluating a Rule 11 motion, the Court must resolve all doubts in favor of the signer. *Great Lakes Reinsurance (UK) PLC v. Blue Sea, LLC*, 2006 WL 2471522, at *3 (M.D. Fla. Aug. 24, 2006) (citing *McMahon Secs. Co. v. FB Foods, Inc.*, 2006 WL 2092643, at *2 (M.D. Fla. July 27, 2006)).

**B.     Plaintiffs' Allegations of "Successor Liability" Are Not Objectively Frivolous**

In its Complaint, Plaintiffs allege that GDW is the "successor" of D&W. (Compl., ¶ 7). GDW argues that this allegation is "frivolous," and urges the imposition of sanctions under Rule 11 based on its contention that (1) GDW and D&W are *separate* legal entities, and (2) none of the four legally viable theories of "successor liability," as recognized by Florida case law, apply here so as to make GDW responsible for D&W's liabilities. In support of this argument, GDW points to an asset purchase agreement between the two entities which specifically excludes D&W's liabilities. (*See* GDW's Motion, at pp. 3 & 6-7). ("GDW purchased certain assets of D&W and did not purchase certain others. . . . In purchasing the assets that it did. GDW specifically declined to assume any

---

[1] *See also Footman v. Cheung*, 139 Fed.Appx. 144, 146, 2005 WL 1253884, at *1 (11th Cir. [Fla.] 2005); *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998); *McGill v. Seminole Club, Inc.*, 2007 WL 2066297, at *3 (M.D. Fla. July 16, 2007).

[2] *See also Jones*, 49 F.3d at 695; *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1563 (11th Cir. 1992); *Threaf Properties, Ltd. v. Title Ins. Co. of Minn.*, 875 F.2d 831, 835 (11th Cir. 1989); *McGill*, 2007 WL 2066297, at *3.

obligations or liabilities of D&W arising prior to the sale. . . . [T]here was no merger of any kind. The documentary evidence of the transaction clearly shows that it was an asset purchase. . . .").

The mere fact that GDW structured the transaction as an "asset purchase" (with no *express* assumption of liabilities) does not automatically insulate GDW from successor liability. In Florida, the general rule is that the obligations and liabilities of a predecessor corporation are not imposed upon the successor entity unless *one* of the following four exceptions are present: (1) the successor expressly or impliedly assumes the obligations of the predecessor, (2) the transaction is a "de facto merger," (3) the successor is a "mere continuation" of the predecessor, or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor corporation. *See Redman v. Cobb Intern'l, Inc.*, 23 F. Supp. 2d 1372, 1375 (M.D. Fla. 1998) (citing *Bernard v. Kee Manufacturing Co., Inc.*, 409 So.2d 1047, 1049 (Fla. 1982)); *Anders v. Jacksonville Electric Auth.*, 443 So.2d 330, 331 (Fla. 1st DCA 1983) (citing *Bernard*, 409 So.2d at 1049).

Plaintiffs' theory of successor liability against GDW is premised upon the applicability of the second exception noted above, that of "de factor merger."[4] Although GDW now takes great pains to characterize the transaction between Gates McVey and D&W (resulting in the formation of GDW) as a mere "asset purchase," it has stated otherwise in press releases and on its website. For example, in a press release issued by GDW on July 28, 2006 [Exhibit "A" hereto, and also available on its website, www.gdwfl.com), entitled "*Merger Creates $1 Billion Real Estate*

---

[3] *See also Jones*, 49 F.3d at 695; *Souron v. Travelers Ins. Co.*, 982 F.2d 1497, 1507-08 (11th Cir. 1993); *Threaf Properties*, 875 F.2d at 835; *McGill*, 2007 WL 2066297, at *3.

[4] Although Plaintiffs do not allege the applicability of the "de facto merger" exception in the Complaint, that was certainly the underpinning of their allegations relating to "successor liability." If GDW is correct, and the pertinent exception under Florida case law must be specifically pled, then, at most, that would be a basis for seeking dismissal of the Complaint pursuant to Rule 12(b)(6). It does not, however, render the already-existing allegations frivolous. In any event, Plaintiffs will be amending the Complaint to include allegations supporting its de facto merger theory.

CASE NO. 2:07-cv-00343-JES-SPC

*Firm*," GDW characterized the transaction between Gates McVey and D&W as a "***merger***." That press release further states that "[t]he ***merger*** is believed to be the largest of its kind in Southwest Florida history." (Ex. A, p. 1). In another press release that same day, entitled "*Southwest Florida Growth Goliath Created--$1 Billion Yearly Revenue Expected After Merger*" [Exhibit "B" hereto], GDW again describes the transaction between Gates McVey and D&W as a "***merger***." (Ex. B, at p. 1). D&W's principal, Frank D'Alessandro, is also quoted in the July 28th press release as stating that "[w]e have ***merged*** two companies that offered different services to the same clientele." (*Id.*). Further, in a joint press release issued by Gates McVey and D&W on July 27, 2006 [Exhibit "C" hereto], the transaction between the two companies is described as a "***merger.***" (Ex. C, at p. 1 ["We are excited about the ***merger*** . . . . Basically, we ***merged*** to meet the needs of our clients in this fast changing real estate industry."]) (emphasis supplied). In fact, nearly one year later, GDW continues to characterize the transaction between Gates McVey and D&W as a "merger" of the two companies. In an interview published in the Naples News on March 19, 2007 [Exhibit "D" hereto], the following quote is attributed to Todd Gates, the current chairman of GDW: "***Since the merger, we've grown dramatically.***" (Ex. D, p. 2).

In addition, recent filings with the Florida Department of State further support Plaintiffs' contention that GDW is the legal successor to D&W under a "de facto merger" theory. In annual reports on file with the Division of Corporations (*see* www.sunbiz.org), both companies list the *same* principal address--7051 Cypress Terrace, Suite 110, Fort Myers, Florida, 33907--and the *same* two individuals--Frank D'Alessandro and Michelle Harrison--are listed as officers of both companies. (*See* Exhibit "E" [2007 Annual Reports filed by GDW and D&W]). Further,

CASE NO. 2:07-cv-00343-JES-SPC

D&W's former employees are now employees of GDW.  (*See* Ex. C, at p.1).  The continuity of management, personnel and physical address support a finding of a "de facto merger."  *See Serchay v. NTS Fort Lauderdale Office Joint Venture*, 707 So.2d 958, 960 (Fla. 4th DCA 1998).

The foregoing evidence--consisting of GDW's own public statements, no less--is more than sufficient to overcome GDW's Rule 11 motion, particularly at this early stage of the proceedings where there has been no discovery propounded by any of the parties.  As several courts in this Circuit have recognized, a claim is "frivolous" only where it has **no factual basis**, is based on a legal theory that has no reasonable chance of success, or when it is filed in bad faith or with an improper motive.  *Altadis USA, Inc. v. NPR, Inc.*, 2004 WL 2624890, at * 2 (M.D. Fla. Nov. 1, 2004) (citing *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)).  *See also Evergreen Security, Ltd. v. Averett, Warmus, Durkee, Bauder & Thompson, P.A.*, 318 B.R. 220, 226 (Bankr. M.D. Fla. 2004) (stating that "[a] complaint is factually groundless and warrants sanctions where the plaintiff has **absolutely no evidence** to support its allegations." (emphasis added).  Clearly, GDW's repeated public characterization of the supposed asset purchase as a "***merger***" provided a sufficient factual basis for Plaintiffs' contention that GDW is the "successor" to D&W under Florida law.  *See Baker*, 158 F.3d at 524 ("[a]lthough sanctions are warranted when the claimant exhibits a 'deliberate indifference to obvious facts,' they are not warranted when the claimant's evidence is merely weak, but appears sufficient, after a reasonable inquiry, to support a claim under existing law.").  Therefore, it cannot be said that Plaintiffs' theory of successor liability is "objectively frivolous."  At worst, it is an issue of fact for the jury to resolve.[5]  But by no means is it sanctionable.

---

[5] Whether a de facto merger has occurred is a question of fact for the jury to resolve.  *See Anders*, 443 So.2d at 331.

CASE NO. 2:07-cv-00343-JES-SPC

### C. Plaintiffs' Counsel Made a "Reasonable Inquiry" Prior to the Filing of the Complaint

The next step of the Rule 11 analysis is for the Court to determine whether Plaintiffs' counsel would have been made aware of the supposed "frivolousness" of the pleading if he had made a "reasonable inquiry." *Great Lakes Reinsurance (UK), PLC v. Blue Sea, LLC*, 2006 WL 2471522, at *4 (M.D. Fla. Aug. 24, 2006). The information presented to this Court in the preceding section (which was compiled during the undersigned counsel's factual investigation *prior to* filing the Complaint) reflects that Plaintiffs made a reasonable inquiry before filing the Complaint.

There is no merit to GDW's argument that information provided to the undersigned counsel *after* the filing of the Complaint[6] is relevant to the Rule 11 inquiry. First, the mere fact that the parties labeled their transaction as an "asset purchase" does not prevent the transaction from being considered a "de facto" merger under Florida's law of successor liability. *See Bernard*, 409 So.2d at 1049). But, even more fundamentally, GDW is improperly focusing on "post-filing" events in assessing whether counsel should be sanctioned under Rule 11 for making certain allegations in a Complaint that was filed *one week earlier*. "Under Rule 11, the district court must focus on what was reasonable for an attorney to believe ***at the time the pleadings were filed***, not on what the court later finds to be the case." *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Associated Contractors, Inc.*, 877 F.2d 938 (11th Cir. 1989) (citing *Threaf*, 875 F.2d at 835) (emphasis supplied). *See also Jones*, 49 F.3d at 695 (under Rule 11, "the court's inquiry focuses only on the merits of the pleading gleaned from facts and law known or available to the attorney ***at the time of filing***. . . . The court is expected to avoid using the

---

[6] On June 5, 2007, *six days after the filing of the Complaint*, GDW's counsel sent a letter to the undersigned counsel attaching a copy of the asset purchase agreement and bill of sale among Gates McVey, GDW and D&W, which purported to exclude certain liabilities of D&W from the transaction. (*See* Exhibit "3" to GDW's Rule 11 motion).

CASE NO. 2:07-cv-00343-JES-SPC

wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe *at the time the pleading, motion, or other paper was submitted*.") (emphasis supplied). Therefore, GDW's counsel's post-filing correspondence is of no moment to the Rule 11 inquiry.[7]

### D. GDW Filed Its Rule 11 Motion Prematurely -- Less Than 21 Days After Service

Rule 11 also imposes strict procedural requirements on parties seeking sanctions. Under Rule 11(c)(1)(A), a motion for sanctions must first be served on a party, which then has **at least 21 days** within which to withdraw the challenged pleading. The movant may file its motion for sanctions with the court "if and only if the offending party has refused to withdraw the challenged pleading ***after* the expiration of 21 days**." *Massachusetts Connection, Inc. v. City of Hartford*, 2005 WL 2123534, at *1 (D. Conn. Sept. 1, 2005) (emphasis added). *See also Greeley Publishing Co. v. Hergert*, 233 F.R.D. 607, 610 n.2 (D. Colo. 2006) ("If, *after* 21 days, the offending party does not withdraw the challenged conduct, the party seeking sanctions may file its motion for sanctions with the court.") (emphasis added); *Doe v. Fulton-Dekalb Hospital Auth.*, 2006 WL 2990442, at *2 (N.D. Ga. 2002) ("before filing a motion for sanctions with the court, the moving party must first serve the motion on the alleged violator *and allow him 21 days* in which to withdraw or appropriately correct the challenged allegation) (citing Fed. R. Civ. P. 11(c)(1)(A)) (emphasis added); *Stephone v. Byblos Trading, Inc.*, 2007 WL 837204, at *1 (S.D. Fla. Jan. 29,

---

[7] Indeed, GDW's counsel appeared be "setting up" the undersigned counsel for a Rule 11 motion by asking him, under the guise of seeking a "courtesy," to withhold *service* of the Complaint on GDW until after the undersigned had an opportunity to review the transactional documents, which were subsequently provided to him several days later. As a courtesy, and not knowing what GDW's counsel had up his sleeve, the undersigned counsel agreed to delay service of the *already-filed* Complaint on GDW by a few days, even though most of the other defendants were already served. It is incredibly rude and unethical for GDW's counsel to try to exploit a simple courtesy into a basis for seeking Rule 11 sanctions. Indeed, if any conduct should be the subject of sanctions, it is that conduct.

CASE NO. 2:07-cv-00343-JES-SPC

2007) ("under [Rule] 11, Plaintiff must not file a motion for sanctions without first giving Defendants 21 days to correct the challenged conduct.") (citing Fed. R. Civ. P. 11(c)(1)(A)).

GDW served its sanctions motion by regular mail on July 10, 2007. (*See* GDW's Motion for Sanctions, at p. 8). Under Rule 6 of the Federal Rules of Civil Procedure, in computing any period of time prescribed by the rules, the day of the act or event is excluded, Fed. R. Civ. P. 6(a), and if a motion is mailed, "3 days shall be added to the prescribed period." Fed. R. Civ. P. 6(e). Therefore, under the foregoing rule, the **earliest date** that GDW could have filed its Rule 11 motion was **August 3, 2007**. Here, however, GDW "jumped the gun" by filing its motion on July 31, 2007. By filing its motion three days before the expiration of the mandatory 21-day waiting period, GDW failed to comply with Rule 11's procedural requirements. Therefore, GDW's Rule 11 motion must be denied as premature. *See Giganti v. Gen-X Strategies, Inc.*, 222 F.R.D. 299, 306 (E.D. Va. 2004) (Rule 11 motion must be denied "where [it] is filed earlier than twenty-one days after service of the motion on the opposing party"); *Martins v. Charles Hayden Goodwill Inn School*, 178 F.R.D. 4, 7 (D. Mass. 1997) ("a motion for Rule 11 sanction is barred where the moving party fails to provide the other party with a 21-day window within which to withdraw allegedly offending papers.").[8]

---

[8] Although GDW claims in its certificate of service that it also "e-mailed" a copy of its Rule 11 motion to Plaintiffs' counsel on July 10, 2007 (when Plaintiffs' counsel was still on vacation), the Local Rules of this Court do not authorize the service of litigation papers by "e-mail." *See* Local Rule 1.07 (authorizing service of papers by "facsimile," but not by e-mail). At no time did the undersigned counsel ever consent in writing to be served by e-mail or other electronic means. *See* Fed. R. Civ. P. 5(b)(2)(D) (permitting service of papers by "electronic means," but only if "consented to in writing by the person to be served."). GDW has not alleged--nor could it--that Plaintiffs consented to being served electronically. Indeed, up until the service of the Rule 11 motion, *all* prior written communications between the parties had been by regular U.S. mail or facsimile. (*See* Exhibits 3 & 4 to GDW's Rule 11 motion). But, even if service by e-mail were permitted, GDW's motion would still be premature because the filing of its motion occurred *on*, rather than *after*, the twenty-first day following its purported electronic transmission via e-mail.

CASE NO. 2:07-cv-00343-JES-SPC

E.     **Rule 11 Motions May Not Be Used as a "Substitute" for a Motion to Dismiss**

In addition to filing its Rule 11 motion prematurely, GDW improperly sought sanctions *prior* to even filing a motion to dismiss. It is well-settled that "Rule 11 should not be used to raise issues of legal sufficiency that more properly can be disposed of by a motion to dismiss, a motion for more definite statement, or a motion for summary judgment." 5A Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1336 (2d ed. Supp. 2003). The Advisory Committee Notes to Rule 11 likewise state that "Rule 11 motions . . . should not be used to test the sufficiency or efficacy of allegations in the pleadings; *other motions are available for those purposes*." Fed. R. Civ. P. 11 Advisory Committee's Note (1993 Amendments) (emphasis added).

"In weighing Rule 11 motions, courts have repeatedly been cognizant of the fact that a Rule 11 motion is not a proper substitute for a motion to dismiss or a summary judgment motion." *Rates Technology Inc. v. Mediatrix Telecom, Inc.*, 2007 WL 2021905, at *5 (E.D.N.Y. Mar. 16, 2007). For example, in *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407 (S.D.N.Y. 2003), the court denied the defendant's Rule 11 motion because it had not yet "challenged the legal sufficiency or efficacy of this . . . action through the channels afforded by the Federal Rules of Civil Procedure." *Id.* at 413. The *Safe-Strap* court pejoratively characterized the defendant's Rule 11 motion as both "improper" and nothing more than a "surrogate" for a summary judgment motion. *Id.* at 412.

Similarly, the court, in *Wald v. Investment Technology Group, Inc.*, 2004 WL 2496131, at * 2 (S.D.N.Y. Nov. 5, 2004), expressly acknowledged "the tension between, on the one hand, a sanctions rule that is intended to prevent frivolous litigation, and, on the other hand, the discovery and summary judgment rules that enable the Court to determine claims on their merits with the benefit of a full record." *Id.*, at *3. In *Wald*, the district court denied the defendant's Rule 11

motion, ultimately concluding that "at this point, **it would be putting the cart before the horse for the Court to . . . determine the merits of the sanctions motion**." *Id.* (emphasis supplied).

Here, too, it would be "putting the cart before the horse" for the Court to determine the merits of a Rule 11 motion which **preceded** a motion to dismiss that is addressed to the exact same issue--*i.e.*, whether Plaintiffs have properly pled a claim of successor liability against GDW. The Advisory Committee Notes to Rule 11--as well as the case-law authority cited above--explicitly proscribe the use of Rule 11 as a medium by which to test the sufficiency or efficacy of a pleading. Moreover, the Court has not yet ruled upon GDW's later-filed Rule 12(b)(6) motion (nor has the briefing of such motion been concluded), rendering consideration of any Rule 11 motion premature.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the entry of an Order denying Defendant GDW's Motion for Sanctions In Accordance with Fed. R. Civ. P. 11, together with such other and further relief as this Court deems just and proper under the circumstances.

Respectfully submitted,

BECKER & POLIAKOFF, P.A.
Attorneys for Plaintiffs
P.O. Box 9057
Fort Lauderdale, FL  33310-9057
(954) 965-5049, telephone
(954) 985-4176, facsimile

By:_____s/Daniel L. Wallach_____
    Gary C. Rosen
    Florida Bar No. 310107
    Daniel L. Wallach
    Florida Bar No. 540277

CASE NO. 2:07-cv-00343-JES-SPC

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document and the notice of electronic filing is being served this day on all counsel of record or pro se parties identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

      BECKER & POLAIKOFF. P.A.

      By: s/ Daniel L. Wallach_____
           Daniel L. Wallach

CASE NO. 2:07-cv-00343-JES-SPC

## SERVICE LIST

**Raquel M. Fernandez, Esq.**
Bilzin Sumberg Baena Price & Axelrod, LLP
Suite 2500
200 S Biscayne Blvd
Miami, FL 33131-5340
Phone: 305/350-2352
Fax: 305/351-2221
Email: rfernandez@bilzin.com
Attorneys for K. Hovnanian First Homes, LLC

**Philip J. Snyderburn, Esq.**
Snyderburn, Rishoi & Swann
Ste 420
258 Southhall Ln
Maitland, FL 32751
Phone: 407/647-2005
Fax: 407/647-1522
Email: psnyderburn@srslaw.net
Attorneys for D'Alessandro & Woodyard, Inc.
and Frank D'Alessandro

**Charles Wachter, Esq.**
**Gianluca Morello, Esq.**
**Perdita Martin, Esq.**
Fowler White Boggs Banker P.A.
501 East Kennedy Boulevard
Tampa, Florida 33602
Phone: 813/769-7867
Fax: 813/229-8313
Email: CWachter@fowlerwhite.com, GMorello@fowlerwhite.com, PMartin@fowlerwhite.com
Attorneys for FHBF Partners, LLP and First Home Builders Of Florida I, LLC

CASE NO. 2:07-cv-00343-JES-SPC

**Ronald L. Buschbom, Esq.**
Conroy, Simberg, Ganon, Krevans Abel,
   Lurvey, Morrow & Schefer, P.A.
4315 Metro Parkway
Suite 250
Ft. Myers, FL  33916
Phone: 239/337-1101
Fax:  239/334-3383
Email:  rbuschbom@conroysimberg.com
Attorneys for Honora Kreitner

**Jon D. Parrish, Esq.**
Parrish, Lawhon & Yarnell, P.A.
3431 Pine Ridge Road, Suite 101
Naples, FL  34109
Phone:  239/566-2031
Fax:  239/566-9561
Email:  jonparrish@napleslaw.us
Attorneys for Gates D'Alessandro & Woodyard, LLC

**Barry A. Postman, Esq.**
**Allison Bernstein, Esq.**
Cole, Scott & Kissane, P.A.
1645 Palm Beach Lakes Blvd.
2nd Floor
West Palm Beach, FL  33401
Phone:  561/383-9234
Fax:  561/683-8977
Email:  postman@csklegal.com
Email:  Allison.bernstein@csklegal.com
Attorneys for Samir Cabrera

FTL_DB: 1067248_1