```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

RANDOLPH SEWELL, DAPHNE SEWELL,
MOSES ESHKENAZI, THERESE ESHKENAZI,
and    HENRIETTE   ESHKENAZI,
individually and on behalf of all
others similarly situated,

              Plaintiffs,

vs.                                    Case No.  2:07-cv-343-FtM-29SPC

D'ALESSANDRO & WOODYARD, INC.; a
Florida for profit corporation;
GATES, D'ALESSANDRO & WOODYARD, LLC;
a Florida limited liability company;
K. HOVNANIAN FIRST HOMES, LLC; FIRST
HOME BUILDERS OF FLORIDA; a Florida
general partnership; FIRST HOME
BUILDERS OF FLORIDA I, LLC, a
Florida limited liability company;
JAN BAILLARGEON, as Personal
Representative of the Estate of
Frank D'Alessandro, deceased; SAMIR
CABRERA, an individual; HONORA
KREITNER, an individual; BRUCE A.
ROBB, an individual; and PATRICK
LOGUE, an individual,

              Defendants.
_____

**OPINION AND ORDER**

      This matter comes before the Court on the following seven motions: (1) Defendants FHBF Partners, LLP,[1] First Home Builders of Florida I, LLC, and Patrick Logue's Motion to Dismiss Counts I

---

[1] FHBF Partners, LLP is the current name of the defendant sued as "First Home Builders of Florida, a Florida general partnership." (Doc. #112, p. 1.)

through IV and VI through IX of the First Amended Class Action Complaint and Motion to Continue Deadline to Respond to Count V and Incorporated Memorandum of Law (Doc. #112); (2) Defendant D'Alessandro & Woodyard, Inc.'s Motion to Dismiss Amended Complaint and Memorandum of Law (Doc. #115); (3) Defendant Gates, D'Alessandro & Woodyard, LLC's Motion to Dismiss the First Amended Class Action Complaint and/or, in the Alternative, for Summary Judgment (Doc. #122); (4) Defendant K. Hovnanian First Homes, LLC's Motion to Dismiss First Amended Class Action Complaint (Doc. #128); (5) Defendant Honora Kreitner's Motion and Incorporated Memorandum of Law to Dismiss Plaintiff's First Amended Class Action Complaint (Doc. #129); (6) Defendant Samir Cabrera's Motion to Dismiss Amended Class Action Complaint and Memorandum of Law (Doc. #137); and, (7) Defendant Jan Baillargeon's (as Personal Representative of the Estate of Frank D'Alessandro) Motion to Dismiss Action and Memorandum of Law (Doc. #151).[2]

Plaintiffs Randolph Sewell, Daphne Sewell, Moses Eshkenazi, Therese Eshkenazi, and Henriette Eshkenazi (collectively, "plaintiffs") filed: (1) a Memorandum of Law in Opposition to All Pending Motions to Dismiss First Amended Class Action Complaint (Doc. #156); and (2) a Memorandum of Law in Opposition to Defendant Jan Baillargeon's Motion to Dismiss (Doc. #165).

---

[2]Defendant Bruce Robb filed an Answer and Affirmative Defenses (Doc. #140).

In response, defendants filed the following replies: (1) Defendants FHBP Partners, LLP, First Home Builders of Florida I, LLC, and Patrick Logue's Reply Memorandum in Further Support of their Motion to Dismiss Counts I through IV and VI through IX of the First Amended Class Action Complaint (Doc. #169); (2) Defendant Honora Kreitner's Reply to Her Motion to Dismiss Plaintiff's First Amended Class Action Complaint (Doc. #168); and, (3) Defendant Samir Cabrera's Reply to Plaintiffs' Memorandum of Law in Opposition to All Pending Motions to Dismiss First Amended Class Action Complaint (Doc. #174).  Two notices of supplemental authority were also filed.  (Docs. ## 200, 201.)

The Court heard oral argument on September 26, 2008.

## I. The Amended Complaint

The First Amended Class Action Complaint ("Amended Complaint") (Doc. #82) alleges that in 2003, defendant First Home Builders,[3] the largest single-family home builder in Lee County, Florida, and D&W[4] and GDW,[5] two of the largest real estate brokerage firms in Lee County, Florida, devised an investment scheme involving the sale of single-family "lease-to-own" homes to individuals who otherwise could not qualify for financing.  (Doc. #82, ¶ 19.)  Pursuant to

---

[3] Defendants First Home Builders of Florida and First Home Builders of Florida I, LLC are collectively referred to as "First Home Builders" both here and in the Amended Complaint. (Doc. #82, ¶ 11.)

[4] Defendant D'Alessandro & Woodyard, Inc.

[5] Defendant Gates, D'Alessandro & Woodyard, LLC.

this scheme, First Home Builders, D&W and GDW would sell real estate lots to investors, build houses on the lots, and provide tenants, who would occupy the houses under lease and option agreements and eventually purchase these houses from the investors. (Id. at ¶¶ 17-19.)  Under these lease and option agreements, tenants would lease the houses for at least a year before having the option to purchase them.  (Id.)  The 14% (fourteen percent) rate of return promised to investors would be realized when tenants exercised their options and bought the investors out of the deal, by purchasing the homes after successful procurement of refinancing in the "sub-prime" lending market.  (Id. at ¶ 29.)  Other than an initial down payment, there would be no out-of-pocket costs or expenses to the investors because the tenant deposits would cover the investors' closing costs and the rent would cover the mortgage and all other expenses associated with the investment.  (Id. at ¶ 32.)

The tenants were to be procured by defendants First Home Builders, D&W, and GDW, and their officers, employees and affiliates, from leads developed by First Home Builders of potential homebuyers who did not otherwise qualify for a mortgage due to insufficient income and/or poor credit histories.  (Id. at ¶ 20.)  First Home Builders would refer the names of such persons to D&W and GDW, who would then recruit them to rent the new "lease-to-own" houses being built by First Home Builders.  (Id. at ¶¶ 18, 20.)  D&W and GDW would market and sell these new houses to

-4-

investors as "leased up" investment properties, which enabled First Home Builders to sell the houses for higher prices and enabled D&W to receive higher commissions. (Id.)

First Home Builders, D&W, and GDW marketed, built and sold hundreds of real estate investment properties pursuant to this common promotional plan. (Id. at ¶ 36.) D&W and GDW set up a satellite sales office in the same building as First Home Builders, acting as agents for First Home Builders by procuring buyers for the numerous residential investment opportunities it had on the market in Cape Coral and Lehigh Acres, Florida. (Id. at ¶¶ 22, 23.) Plaintiffs allege that the following oral and written representations, upon which plaintiffs relied, were made by defendants to prospective investors in an effort to induce them to purchase one or more of the building lots from First Home Builders:

> 1. That tenants would be provided for each property purchased;
>
> 2. That investors would receive a 14% rate of return on each investment property based upon a tenant occupying, and then purchasing, the property;
>
> 3. That no cash outlay would be required other than the initial down payment; and
>
> 4. That First Home Builders and/or D&W and/or GDW would take care of everything, including but not limited to, the procurement of tenants through their sole efforts.

(Id. at ¶¶ 24-25.) The principal document setting forth these "misrepresentations" (id. at ¶¶ 26, 34) was a prospectus titled "First Home Lease Purchase Investment Opportunity," prepared by

defendants D'Alessandro[6] and Cabrera, with the approval of First Home Builders.  This Prospectus contained the following relevant disclosures:

> 1. Investors will purchase a home from First Home Builders.  The homes will be built in Cape Coral and Lehigh Acres, Florida.
>
> 2. D&W and GDW will provide a tenant with a lease option contract.
>
> 3. Tenants will give a deposit of $5,000 or more when they move into the property.
>
> 4. D&W and GDW will ensure that the rent paid by the tenant will be based upon an equation at a 1% spread between the owner/investor's mortgage and the rent.  D&W or GDW will charge a 2% fee once the tenant purchases the property.
>
> 5. Investors will receive a gross return of 14% of the sales price of the home, which will be paid once the tenant refinances the home in their name, buying the investor out of the deal.
>
> 6. The 14% is contractually agreed-upon by the tenant prior to occupancy.
>
> 7. The property will be managed by the Florida Gulf Coast Property Management Division of D&W and GDW.  The property manager will manage the tenants and property, and document all payments.

(Id. at ¶ 28; Doc. #82-2, p. 2.)

Plaintiffs assert that these "foregoing representations and disclosures" were materially false and misleading, and were knowingly so at the time they were made.  (Doc. #82, ¶ 34.)  "To date, [plaintiffs assert that] no tenant has been secured for any

---

[6]While Mr. D'Alessandro's estate is now the named defendant, the Court continues to refer to the defendant as D'Alessandro.

of the purchased properties, . . . And, as a result of Defendants' failure to procure tenants, Plaintiffs have yet to realize the rate of return promised by Defendants." (Id. at ¶ 34.) Plaintiffs assert that they were induced to enter into such loans based upon the following false and misleading assurances by defendants:

>   1.  Their total cash outlay would be limited to their initial contract deposit;
>
>   2.  First Home Builders would make all loan payments during the course of construction; and
>
>   3.  Upon completion of construction and procurement of an end-loan, the rental payments received from tenants procured by First Home Builders and/or D&W and/or GDW would exceed any amounts that would otherwise be due and owing under the permanent loan.

(Id. at ¶ 42.)

Plaintiffs' nine-count Amended Complaint alleges the following claims: Count I: violation of Section 12(a)(2) of the Securities Act of 1933 (by defendants Hovnanian, First Home Builders, D&W and GDW); Count II: "controlling person" liability under Section 15 of the Securities Act of 1933 (by defendants D'Alessandro, Cabrera, Robb and Logue); Count III: fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (by all defendants); Count IV: "controlling person" liability under Section 20(a) of the Securities Exchange Act of 1934 (by defendants D'Alessandro, Cabrera, Robb and Logue); Count V: violation of Sections 1703(a)(1)(A) and (B) of the Interstate Land Sales Full Disclosure Act (by all defendants); Count VI: fraud in violation of Sections 1703(a)(2)(A)-(C) of the Interstate Land Sales Full

Disclosure Act (by all defendants); Count VII: breach of contract (by defendants First Home Builders, Hovnanian, D&W and GDW); Count VIII: breach of duty of good faith and fair dealing (by defendants Hovnanian, First Home Builders, D&W and GDW); and, Count IX: deceptive and unfair trade practices (by all defendants). Plaintiffs also seek class certification of the following class:

> All persons who purchased one or more real properties for investment purposes from First Home Builders in either Cape Coral or Lehigh Acres, Florida between September 1, 2003 and December 31, 2005 (the 'Class Period'), based upon representations made by First Home Builders or any of its agents, including, but not limited to the real estate brokerage firm of D'Alessandro & Woodyard, Inc., that: (a) investors would receive a fourteen percent return on their investment based upon a tenant occupying, and then purchasing, the property; (b) the tenants for each property would be procured solely through the efforts and expertise of First Home Builders and/or D'Alessandro and Woodyard (and/or their respective affiliates or co-brokers); and (c) no cash outlay would be required from investors other than the initial down payment would be required.

(Doc. #82, ¶ 52.)

## II. Motion to Dismiss Standards

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. Erickson v. Pardus, 127 S. Ct. 2197 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). On the other hand, conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts are insufficient to prevent

dismissal. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted).

Generally, to satisfy the pleading requirements of Rule 8, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citing FED. R. CIV. P. 8). The complaint must include factual allegations adequate to raise a right to relief above the speculative level, that is, to set forth a plausible entitlement to relief. Bell Atl. Corp. v. Twombly, 540 U.S. ___, 127 S. Ct. 1955, 1964-67 (2007)[7]; Erickson v. Pardus, 127 S. Ct at 2200; Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282 (11th Cir. 2007). Dismissal is also warranted under FED. R. CIV. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford County, 960 F.2d 1002, 1009-10 (11th Cir. 1992). The standard of review in securities litigation cases was summarized in In re Miva, Inc., 511 F. Supp. 2d 1242, 1246-47 (M.D. Fla. 2007)

---

[7]The former rule had been that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). The Eleventh Circuit has stated that Twombly retired this often-criticized standard. James River Ins. Co. v. Ground Down Engineering, Inc., 2008 WL 3850687, at *3 (11th Cir. 2008).

(Steele, J.) and In re Miva, Inc., 544 F. Supp. 2d 1310, 1314-15 (M.D. Fla. 2008) (Steele, J.), and is adopted here.

The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). The Court may consider documents that are central to the plaintiff's claim whose authenticity is not challenged, whether the document is physically attached to the complaint or not, without converting the motion into one for summary judgment. Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005); Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005); Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007). The Court may also take judicial notice of certain facts without converting the motion to dismiss into a summary judgment motion. Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999), held that "a court, when considering a motion to dismiss in a securities fraud case, may take judicial notice (for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents) of relevant public documents required to be filed with the SEC, and actually filed." See also Garfield v. NDC Health Corp., 466 F.3d 1255, 1260 n.2 (11th Cir. 2006) (same); Oxford Asset Mgmt. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002), cert. denied, 540 U.S. 872 (2003) (same).

Some of the defendants phrase parts of their motions in terms of subject matter jurisdiction and standing, thus implicating FED. R. CIV. P. 12(b)(1). Rule 12(b)(1) motions challenging the subject matter jurisdiction of the court come in two forms, a "facial" attack motion and a "factual" attack motion. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). A facial attack challenges subject matter jurisdiction based on the allegations in the complaint, and the court takes the allegations in the complaint as true in deciding the motion. Id. at 924 n.5. Thus, the facial attack standard is similar to the Rule 12(b)(6) standard. O'Halloran v. First Union Nat'l Bank of Fla., 350 F.3d 1197 (11th Cir. 2003); Doe v. Pryor, 344 F.3d 1282, 1284-85 (11th Cir. 2003). When a factual attack is made to subject matter jurisdiction, the court may consider facts outside the pleadings such as testimony and affidavits, as long as the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action. Morrison, 323 F.3d at 924-25; Goodman v. Sipos, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001).

### III.  Fraud Pleading Requirements

The Court concludes that the fraud-related counts fail to satisfy the pleading requirements of FED. R. CIV. P. 9(b) as to the sufficiency of the allegations of actionable misrepresentations or omissions. While numerous other issues are raised in the motions to dismiss, the Court declines to rule on them at this time because plaintiffs will be given one final opportunity to amend their

complaint and such amendment may impact the issues raised in defendants' motions.

The Court has previously summarized the standards under Rule 9(b) and the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4(b) (1998), in In re Miva, 544 F. Supp. 2d at 1314-15, and In re Miva, 511 F. Supp. 2d at 1246-47. Rule 9(b), which applies to all of the fraud-based claims, requires a complaint to set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud. Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001); Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006). The Amended Complaint is essentially required to identify the "who, what, when, where, and how . . . ." Garfield, 466 F.3d at 1262. "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005), cert. denied, 127 S. Ct. 42 (2006).

The Amended Complaint sets forth what it purports to be "The Actionable Misrepresentations and Omissions Attributable to the Defendants" at paragraphs 22 through 35. In sum, the Amended Complaint alleges that the following oral and written representations were made to prospective investors in an effort to

induce them to purchase one or more properties from First Home Builders:

> 1. That tenants would be provided for each property purchased;
>
> 2. That investors would receive a 14% rate of return on each investment property based upon a tenant occupying, and then purchasing, the property;
>
> 3. That no cash outlay would be required other than the initial down payment; and
>
> 4. That First Home Builders and/or D&W and/or GDW would take care of everything, including but not limited to, the procurement of tenants through their sole efforts.

(Doc. #82, ¶¶ 24-25.)  No omissions are identified in the Amended Complaint.

The Amended Complaint generally fails to satisfy the Rule 9(b) requirements.  For example, the Amended Complaint fails to allege specifically who made what misrepresentations, generalizing instead that misrepresentations "were made by defendants First Home Builders, D&W, and GDW and their agents, representatives and affiliates (including other real estate brokerage firms which acted as referring brokers)."  (Doc. #82, ¶24.)  The Amended Complaint also typically fails to distinguished between misrepresentations made in writing or orally:

> The foregoing representations were made both orally and in writing.  While some prospective investors received only oral representations concerning the matters stated above, and other investors received <u>both</u> oral and written representations covering the foregoing matters, and, in some cases, only First Home Builders or D&W and GDW (but not the other made such representations, <u>the making of these representations was central to Defendants' common scheme</u>.  These representations uniformly were made by

>     agents and representatives of First Home Builders or D&W
>     and GDW to advance the common scheme to defraud . . . .

(Doc. #82, ¶25 (emphasis in original).)  As discussed at the oral argument, paragraphs 30, 32, and 33 of the Amended Complaint also are insufficient.  Such generic statements are not sufficient to comply with the Rule 9(b) pleading standards.

The Court need not rule, at this juncture, on plaintiffs' group pleading theory.  The Court would note, however, that the Eleventh Circuit stated in Phillips v. Scientific-Atlanta, Inc., 374 F.3d 1015, 1018-19 (11th Cir. 2004), that it had not decided whether the group pleading doctrine is viable under the PSLRA and Rule 9(b).  Since then, one panel of the Eleventh Circuit cited two of its prior cases for the proposition that "[i]n a [fraud] case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient." West Coast Roofing and Waterproofing, Inc. v. Johns Manville, Inc., 2008 WL 2845215 (11th Cir. 2008) (citing Ambrosia Coal & Constr. Co. v. Morales, 482 F.3d 1309, 1317 (11th Cir. 2007) and Brooks v. Blue Cross & Blue Shield, 116 F.3d 1364, 1381 (11th Cir. 1997)). Plaintiffs' reliance on In re Miva, 511 F. Supp. 2d at 1250 (Doc. #156, p. 24 n.8) is misplaced because the Court stated it would "assume for purposes of the motion" that the doctrine applied.  The Court, in In re Miva, 544 F. Supp. 2d at 1317-18, found that the group pleading doctrine does not apply to oral statements.

The Court will allow plaintiffs to file a second amended complaint to address these deficiencies, and to the extent they feel it is necessary, the numerous other deficiencies identified by the motions to dismiss. The Court does not anticipate giving plaintiffs another opportunity to file another amended complaint, and for that reason will allow plaintiffs thirty days to file the second amended complaint.

### IV.  Additional Matters

At oral argument, two defendants, K. Hovnanian and GDW, argued that plaintiffs should not be allowed to file an amended complaint as to claims against them because any amendment would be futile to sustain such claims. Given the motion to dismiss standards, the issue is whether it is possible for plaintiffs to amend their complaint in such a manner as to show a plausible claim as to either of these defendants. Plaintiffs conceded at oral argument that the only basis for liability for each of these defendants is successor liability. The Eleventh Circuit has recently stated: "Under Florida law, a predecessor corporation's liability may be imposed on its successor corporation if: (1) the successor assumes the obligations of the predecessor; (2) the transaction is a de facto merger; (3) the successor is a mere continuation of the predecessor; or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor." Centimark Corp. v. A to Z Coatings & Sons, Inc., 2008 WL 2909299 (11th Cir. 2008) (citations

omitted).  The Court concludes that it cannot say that plaintiffs will be unable to set forth a plausible claim as to each defendant based on successor liability.  Therefore, plaintiffs will be given one more opportunity to do so.  As to GDW's motion for summary judgment on this issue, the press releases referring to the "merger" are sufficient, at least in the absence of any discovery in this case, to create a material issue of disputed fact which precludes summary judgment.

Defendant Jan Baillargeon's motion asserting a violation of FED. R. CIV. P. 25(a)(1) is denied.  Alternatively, the Court will allow substitution under Rule 25(a)(1) *nunc pro tunc*.

Accordingly, it is now

**ORDERED**:

1. Defendants FHBF Partners, LLP, First Home Builders of Florida I, LLC, and Patrick Logue's Motion to Dismiss Counts I through IV and VI through IX of the First Amended Class Action Complaint and Motion to Continue Deadline to Respond to Count V and Incorporated Memorandum of Law (Doc. #112) is **GRANTED in part and DENIED in part as moot** to the extent that the First Amended Class Action Complaint is dismissed without prejudice and plaintiffs will be granted leave to file a second amended complaint.

2. Defendant D'Alessandro & Woodyard, Inc.'s Motion to Dismiss Amended Complaint and Memorandum of Law (Doc. #115) is **GRANTED in part and DENIED in part as moot** to the extent that the First

Amended Class Action Complaint is dismissed without prejudice and plaintiffs will be granted leave to file a second amended complaint.

3. Defendant Gates, D'Alessandro & Woodyard, LLC's Motion to Dismiss the First Amended Class Action Complaint and/or, in the Alternative, for Summary Judgment (Doc. #122) is **GRANTED in part and DENIED in part as moot** to the extent that the First Amended Class Action Complaint is dismissed without prejudice and plaintiffs will be granted leave to file a second amended complaint.

4. Defendant K. Hovnanian First Homes, LLC's Motion to Dismiss First Amended Class Action Complaint (Doc. #128) is **GRANTED in part and DENIED in part as moot** to the extent that the First Amended Class Action Complaint is dismissed without prejudice and plaintiffs will be granted leave to file a second amended complaint.

5. Defendant Honora Kreitner's Motion and Incorporated Memorandum of Law to Dismiss Plaintiff's First Amended Class Action Complaint (Doc. #129) is **GRANTED in part and DENIED in part as moot** to the extent that the First Amended Class Action Complaint is dismissed without prejudice and plaintiffs will be granted leave to file a second amended complaint.

6. Defendant Samir Cabrera's Motion to Dismiss Amended Class Action Complaint and Memorandum of Law (Doc. #137) is **GRANTED in**

**part and DENIED in part as moot** to the extent that the First Amended Class Action Complaint is dismissed without prejudice and plaintiffs will be granted leave to file a second amended complaint.

7. Defendant Jan Baillargeon's, as Personal Representative of The Estate of Frank D'Alessandro, Motion to Dismiss Action and Memorandum of Law (Doc. #151) is **GRANTED in part and DENIED in part as moot** to the extent that the First Amended Class Action Complaint is dismissed without prejudice and plaintiffs will be granted leave to file a second amended complaint.

8. Plaintiffs may file a second amended complaint on or before **October 31, 2008.** All defendants shall file an answer or otherwise respond within **TWENTY (20) DAYS** of the filing of the second amended complaint.

**DONE AND ORDERED** at Fort Myers, Florida, this __29th__ day of September, 2008.

_____
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record