UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RANDOLPH SEWELL, DAPHNE
SEWELL, MOSES ESHKENAZI, THERESE
ESHKENAZI, and HENRIETTE ESHKENAZI
individually and on behalf
of all others similarly situated,

      Plaintiffs,

v.

D'ALESSANDRO & WOODYARD, INC.,
a Florida for-profit corporation; GATES,
D'ALESSANDRO & WOODYARD, LLC, a
Florida limited liability company; K. HOVNANIAN
FIRST HOMES, L.L.C., a New Jersey limited
liability company; FIRST HOME BUILDERS
OF FLORIDA, a Florida general partnership; FIRST
HOME BUILDERS OF FLORIDA I, LLC, a Florida
limited liability company; JAN BAILLARGEON,
as Personal Representative of the Estate of Frank
D'Alessandro, deceased; SAMIR CABRERA, an
individual; HONORA KREITNER, an individual,
BRUCE A. ROBB, and individual, and PATRICK
LOGUE, an individual,

      Defendants.
_____/

Case No.: 2:07-cv-00343-JES-SPC

**DEFENDANT K. HOVNANIAN FIRST HOMES, LLC'S
BRIEF ON THE IMPACT OF THE SUPREME COURT'S DECISION IN
*MERCK & CO., INC. V. REYNOLDS*, -- S. Ct. --, No. 08-905, 2010 WL 1655827
(April 27, 2010)**

Pursuant to this Court's *sua sponte* order dated May 4, 2010, Defendant, K. Hovnanian First Homes, LLC ("KHFH") hereby submits its brief on the impact of the Supreme Court's decision in *Merck & Co., Inc. v. Reynolds*, -- S. Ct. --, No. 08-905, 2010 WL 1655827 (April 27, 2010) on this case.

**Preliminary Statement**

In this Court's Opinion and Order dated September 10, 2009 (the "Dismissal Order"), the Court dismissed certain of Plaintiffs' claims for violation of federal securities laws on the basis of statute of limitations. *See* Doc # 290, pp. 21-31. Specifically, this Court relied on the statute of limitations to dismiss Counts 1(violation of Section 12(a)(2) of the Securities Act of 1933) and 2 ("controlling person" liability under Section 15(a) of the '33 Act) with respect to both the Eshkenazi plaintiffs and the Sewell plaintiffs, and to dismiss Counts 3 (fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5) and 4 ("controlling person" liability under Section 20(a) of the '34 Act) with respect to the Eshkenazi plaintiffs.

For each of its statute of limitations rulings—both with regard to Plaintiffs' Section 12(a)(2) claims and their Section 10(b) and Rule 10b-5 claims, the Court applied the standard of inquiry notice established by the Eleventh Circuit. *See e.g., Franze v. Equitable Assurance,* 296 F.3d 1250, 1254 (11th Cir. 2002) (finding both 12(a)(2) and 10b-5 claims time-barred based on plaintiff's inquiry notice); *Theoharous v. Fong*, 256 F.3d 1219, 1228 (11th Cir. 2001) (finding 10b-5 claim time-barred based on plaintiff's inquiry notice).

In *Merck*, however, the Supreme Court expressly abrogated the inquiry notice standard in connection with Section 10(b) and Rule 10b-5 claims that this Court applied in its Dismissal Order. As a result, the Court in its Dismissal Order has requested the parties address what impact, if any, *Merck* has on this case.

-1-

The short answer is none. Although *Merck* unquestionably changes the standards and raises the bar for when a party is deemed to have constructive notice of a possible Section 10(b)/Rule 10b-5 claim, the decision should not affect any of this Court's ultimate rulings in its Dismissal Order.

First, with respect to Plaintiffs' Section 10(b)/Rule 10b-5 claims that are directly implicated by *Merck*, this Court did not rely on the statute of limitations to dismiss the Sewell plaintiffs' claims. (Dismissal Order pp. 28-29, 32.) Rather, the Court based its dismissal of these claims on its determination that Plaintiffs had failed to sufficiently allege the necessary element of scienter. (Dismissal Order pp. 36-42.) Since scienter is as necessary an element of the Eshkenazi plaintiffs' Section 10(b)/Rule 10b-5 claims as it is for the Sewell plaintiffs, and because the scienter deficiencies of the Second Amended Complaint that this Court discussed with respect to the Sewells are equally applicable to the Eshkenazis, the Court's scienter ruling also would require the dismissal of the Eskenazis' Section 10(b)/Rule 10b-5 claims.

Second, with respect to both the Sewell and Eshkenzi plaintiffs' Section 12(a)(2) claims, the Supreme Court's decision in *Merck* did not address the statute of limitations under this statute. And, as the Supreme Court observed, the language of the statute of limitations for Section 12(a)(2) claims is different from the statute of limitations language for Section 10(b)/Rule10b-5 claims.

Moreover, unlike a Section 10(b)/Rule 10b-5 claim, scienter is not an element of a Section 12(a)(2) claim. Thus even if this Court applied the same constructive notice test that the Supreme Court established in *Merck* for Section 10(b)/Rule10b-5 claims to Plaintiffs' Section 12(a)(2) claims, then, based on this Court's findings in its Dismissal Order, its conclusion that Plaintiffs were on constructive notice of their Section 12(a)(2) claims well outside of the statute of limitations would be unaffected.

2

## The Merck Decision

In *Merck* the Supreme Court was called upon to construe the meaning of 28 USC § 1658(b)(1), which sets forth the statute of limitations for claims asserting a violation of Section 10(b) of the Securities Exchange act of 1934 and Rule 10b-5. More specifically, the Supreme Court addressed the portion of the statute that requires a complaint to be filed within "2 years after **the discovery of the facts constituting the violation.**" 2010 WL 1655827 at *4-5 (emphasis added).

The Supreme Court held that "'discovery' as used in this statute encompasses not only facts the plaintiff actually knew, but also those facts a reasonably diligent person would have known." *Id.* at *11. The Supreme Court further held that for purposes of conducting the "reasonably diligent person" test, "the 'facts constituting the violation' include the fact of scienter." *Id.* at *4. The Supreme Court explained that the "'fact' of scienter 'constitut[es]' an important and necessary element of a §10(b) violation," and that "unless a §10(b) plaintiff can set forth facts in the complaint showing that it is 'at least as likely as' not that the defendant acted with the relevant knowledge or intent, the claim will fail." *Id.* at *12.

Although the Supreme Court affirmatively adopted the reasonably diligent person test, it rejected the standard of "inquiry notice" that the Eleventh Circuit had used to determine when a plaintiff was deemed to discover a Section 10(b)/Rule 10b-5 violation. *See Theoharous,* 256 F.3d at 1228 (limitations period begins to run when information puts plaintiffs on "inquiry notice" of the need for investigation). The Supreme Court reasoned that "the point where the facts would lead a reasonably diligent plaintiff to investigate further… is not necessarily the

3

point at which the plaintiff would already have discovered facts showing scienter or other 'facts constituting the violation.'" 2010 WL 1655827 at *13.

## ARGUMENT

## Merck Should Not Impact This Court's Dismissal of Plaintiffs' Securities Claims

### 1. The Section 12(a)(2) Claims

As a threshold matter, the Supreme Court's decision in *Merck* should not apply to this Court's dismissal of Plaintiffs' Section 12(a)(2) claims because on its face *Merck* applied **only** to the statute of limitations for Section 10(b)/Rule 10b-5 claims. Thus, the Eleventh Circuit's inquiry notice test remains the binding standard in this circuit for Section 12(a)(2) claims. *See e.g., Franz,* 296 F.3d at 1254 (finding the plaintiff's 12(a)(2) claim time-barred based on the plaintiff's inquiry notice).

The Supreme Court's restriction of its decision to Section 10(b)/Rule 10b-5 claims was not a mere technicality. Indeed, as both Justice Breyer in his majority opinion and Justice Scalia in his concurrence pointed out, the language of the statutes of limitation for Section 12(a)(2) claims and Section 10(b)/Rule 10b-5 claims is significantly different. *See* 2010 WL 1655827 at *10, 17. A claim under Section 10(b) and Rule 10b-5 must be brought within "2 years **after the discovery of the facts constituting the violation**." 28 U.S.C. Section 1658(b)(1). *Id.* at *1. By contrast, the statute of limitations for a claim under Section 12(a)(2) must be brought "within one year after discovery of the untrue statement or the omission, **or after such discovery should have been made by the exercise of reasonable diligence**." 15 U.S.C. § 77m. This difference in the language cannot be disregarded.

4

The Supreme Court grounded its rejection of the inquiry notice test because "[28 U.S.C. Section 1658(b)(1)] contains no indication that the limitations period should occur at some earlier moment before 'discovery,' when a plaintiff would have *begun* investigating." *Id*. at * 13 (emphasis in original).  15 U.S.C. Section 77m, on the other hand—with its express reference to the "exercise of reasonable diligence"—provides precisely that indication.  Accordingly, for this reason alone, The Court's dismissal of Plaintiffs' Section 12(a)(2) claims should remain unaffected by *Merck*.

Even assuming, however, that the this Court were to apply the Supreme Court's interpretation of the statute of limitations for Section 10(b)/Rule 10b-5 claims to the statute of limitations for Section 12(a)(2) claims—notwithstanding the different language of the statutes—Plaintiffs' Section 12(a)(2) claims still must be deemed time-barred.  As discussed above, the Supreme Court held that "discovery" as used in the statute of limitations for Section 10(b)/Rule 10b-5 claims "encompasses not only those facts the plaintiff actually knew, but also those facts a **reasonably diligent plaintiff** would have known." *Id*. at *11 (emphasis added).  Employing this standard to Plaintiffs' Section 12(a)(2) claims in this case, this Court's findings in its Dismissal Order confirm that Plaintiffs would have known that the alleged misrepresentations that underlie Plaintiffs' Section 12(a)(2) claim were false more than one year before Plaintiffs filed their original complaint.

Beginning at page 25 of the Dismissal Order and continuing through page 27, this Court compared the disclaimers in the written Purchase Agreements with the alleged promises underlying the alleged investment opportunity that is the basis of Plaintiffs' Section 12(a)(2) claims.  The Court concluded that the disclaimers "directly contradicted [Plaintiffs'] understanding of the investment opportunity." (Dismissal Order at 26.)  The Court determined

further that "[r]easonable investors, faced with these fundamental discrepancies between what they had been told orally and in writing and the terms of their Purchase Agreements, would have been on inquiry notice that something was amiss with the "investment opportunity" promoted by these defendants." (Dismissal Order at 27.)

Even though this Court applied the "inquiry notice" standard that was established by the Eleventh Circuit, the Court undoubtedly would have reached that same conclusion if it had used the "reasonably diligent person" test the Supreme Court said was applicable to Section 10(b)/Rule 10b-5 claims. In fact, as this Court explained, "[t]he Purchase Agreements negated the entire *raison d'etre* of the proposed investment." *Id.*.

The fact that Plaintiffs' 12(a)(2) claims would fail under either the "inquiry notice test" or the "reasonably diligent person" standard is particularly true because—unlike a Section 10(b)/Rule 10b-5 claim—scienter is not an element of a Section !2(a)(2) claim. *See, e.g., Wagner v. First Horizon Pharmaceutical Corporation*, 464 F.3d 1273, 1277 (11th Cir. 2006) (allegations of scienter are not a necessary part of a Section 12(a)(2) claim). Thus the only question for the Court to determine for purposes of the statute of limitations analysis is whether the "directly contradictory" language of the Purchase Agreements would have put a reasonably diligent person on notice of the alleged misrepresentations made in connection with the alleged investment opportunity. Again, because of this Court's specific findings in its Dismissal order, the answer to this question has to be a resounding yes.

In short, whether analyzed under the "inquiry notice" standard that is still controlling in this Circuit for Section 12(a)(2) claims, or under the "reasonably diligent person" test that the Supreme Court announced in *Merck* for Section 10(b)/Rule 10b-5 claims, Plaintiffs' Section 12(a)(2) claims fall outside of the one year statute of limitations. For these reasons, this Court's dismissal of Plaintiffs' Section 12(a)(2) claims should be left undisturbed.

## 2. The Section 10(b)/Rule 10b-5 Claims

The Court's dismissal of Plaintiffs' Section 10(b)/Rule 10b-5 claims also should not be impacted by the Supreme Court's decision in *Merck,* albeit for a different reason. As discussed above, this Court did not dismiss the Sewell plaintiffs' Section 10(b)/Rule 10b-5 claims on statute of limitations grounds. The Court reasoned that because the Sewells did not sign their purchase agreements until July 2005, and because the original complaint was filed at the end of May 2007, the Sewells fell within the two year statutory period for commencing a securities fraud action.

Rather this Court dismissed the Sewell plaintiffs' Section 10(b)/Rule 10b-5 claims based on its determination that they had failed to sufficiently allege the necessary element of scienter. (Dismissal Order pp. 36-42.) The Court analyzed in detail Plaintiffs' scienter allegations under the "strong inference of scienter" standard established by the Supreme Court in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007), and expanded on by the Eleventh Circuit in *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238-39 (11th Cir. 2008). It concluded that "the Sewell plaintiffs have failed to properly plead that defendants acted with scienter, as required to establish the Rule 10b-5 violations set forth in Count III." (Dismissal Order at 42.)

The Court's reasoning regarding the Sewell Plaintiffs' failure to adequately plead scienter is equally applicable to the Eshkenazi Plaintiffs. As the Court observed in its Dismissal Order, "[t]he Second Amended Complaint cites to eight factors to support plaintiffs' claimed showing of a strong inference of scienter." (Dismissal Order at 37.) These allegations do not differentiate the Sewell plaintiffs from the Eshkenazi plaintiffs in any fashion. To the contrary, Plaintiffs' scienter allegations are presented as to both the Sewell plaintiffs and the Eshkenazi plaintiffs without distinction. (*See* Doc. # 206, ¶ 88.) Thus to the same extent that the Sewell plaintiffs' failure to make the showing of a "strong inference of scienter" mandated by *Tellabs* and *Mizzaro*

7

required the dismissal of their Section 10(b)/Rule 10b-5 claims, the similar failure of the Eshkenazi plaintiffs necessitates the same result.

The Supreme Court's decision in *Merck* does not alter this conclusion. Indeed, as discussed above, the Supreme Court emphasized the heightened pleading standard of scienter as a principal basis for its rejection of the inquiry notice test to determine when the statute of limitations begins to run. *See* 2010 WL 1655827 at *12.

The bottom line is that, just like the Sewell plaintiffs, the Eskenazi plaintiffs' Section 10(b)/Rule 10b-5 claims should be dismissed as a matter of law for lack of scienter. It thus is unnecessary to determine whether these claims also would fail on statue of limitations grounds if analyzed under the standard established by the Supreme Court in *Merck*.

## CONCLUSION

The Supreme Court's decision in *Merck* without question has changed the standard for ascertaining when a Section 10(b)/Rule 10b-5 securities violation should be deemed to have been discovered. However, for the reasons set forth above, this change does not impact this Court's dismissal of Plaintiffs' claims for violation of federal securities laws.

Dated: May 25, 2010

                                        Respectfully submitted,

                                        BILZIN SUMBERG BAENA PRICE
                                        & AXELROD LLP
                                        Attorneys for Defendants
                                        200 South Biscayne Boulevard
                                        Suite 2500
                                        Miami, Florida 33131
                                        Telephone: (305)374-7580
                                        Fax:        (305)374-7593

                                        BY:   s/ Robert W. Turken
                                              ROBERT W. TURKEN, ESQ.
                                              Florida Bar No. 306355
                                              Rturken@Bilzin.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 25, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day via transmission of Notice of Electronic Filing generated by CM/ECF on:

Gary C. Rosen
grosen@becker-poliakoff.com
Daniel L. Wallach
dwallach@becker-poliakoff.com
Attorneys for Plaintiffs
Becker & Poliakoff, P.A.
P.O. Box 9057
Ft. Lauderdale, FL 33310-9057
Telephone: 954-985-4133
Facsimile: 954-985-4176


Philip J. Snyderburn, Esq.
psnyderburn@srslaw.net
William Rishoi, Esq.
wrishoi@srslaw.net
Attorney for D'Alessandro & Woodyard, Inc. and Frank D'Alessandro
Snyderburn, Rishoi & Swann
Ste 420
258 Southhall Ln
Maitland, FL 32751
Telephone: 407-647-2005
Facsimile: 407-647-1522

Charles Wachter, Esq.
charles.wachter@hklaw.com
Attorneys for Defendants First Home Builders of Florida and First Home Builders of Florida I, LLC
Holland & Knight LLP
100 N. Tampa Street, Suite 4100
Tampa, FL 33602
Telephone: 813-227-8500
Fax: 813-229-0134

Ronald L. Buschbom, Esq.
Rbuschbom@conroysimberg.com

Attorneys for Defendant Honora Kreitner
Conroy, Simberg, Ganon, Krevans,
Abel, Lurvey, Morrow & Schefer, PA
4315 Metro Parkway, Suite 250
Ft. Myers, FL 33916
Telephone: 239-337-1101
Facsimile: 239-334-3383

Barry Postman, Esq.
barry.postman@csklegal.com
Attorneys for Defendant Samir Cabrera
Cole, Scott & Kissane, P.A.
1645 Palm Beach Lakes Blvd.
2nd Floor
West Palm Beach, FL 33401
Telephone: (561) 383-9234
Fascimile: (561) 683-8977

Jon Douglas Parrish, Esq.
jonparrish@napleslaw.us
Attorneys for Defendant Gates D'Alessandro
Parrish, Lawhon & Yarnell, P.A.
3431 Pine Ridge Rd., Suite 101
Naples, FL 34109
Telephone: 239-566-2013
Facsimile: 239-566-9561

Ronald Sturgis Holliday, Esq.
ronald.holliday@dlapiper.com
Steven Douglas Knox, Esq.
douglas.knox@dlapiper.com
Attorneys for Bruce Robb
DLA Piper Rudnick Gray Cary US, LLP
Suite 2000
101 East Kennedy Blvd.
Tampa, FL  33602-5148

s/ Robert W. Turken<br>Robert W. Turken