UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO. 2:07-cv-343-FTM 29 SPC

RANDOLPH SEWELL, and DAPHNE
SEWELL, MOSES ESHKENAZI, THERESE
ESHKENAZI, and HENRIETTE ESHKENAZI,
individually and on behalf of all others
similarly situated,

    Plaintiffs,

v.

D'ALESSANDRO & WOODYARD,
INC., a Florida for-profit corporation;
GATES, D'ALESSANDRO & WOODYARD,
LLC, a Florida limited liability company;
K. HOVANIAN FIRST HOMES, L.L.C.,
a New Jersey limited liability company,
FIRST HOME BUILDERS OF FLORIDA,
a Florida general partnership; FIRST HOME
BUILDERS OF FLORIDA I, LLC, a Florida
limited liability company; JAN BAILLARGEON,
as Personal Representative of the ESTATE OF
FRANK D'ALESSANDRO, Deceased;
SAMIR CABRERA, an individual; HONORA
KREITNER, an individual, BRUCE A. ROBB,
an individual, and PATRICK LOGUE, an individual,

    Defendants.
_____/

### DEFENDANT, SAMIR CABRERA'S MEMORANDUM ADDRESSING THE IMPACT OF *MERK & CO., INC. v. REYNOLDS* ON THE SUBJECT CASE PURSUANT TO COURT ORDER DATED MAY 4, 2010

COMES NOW Defendant, SAMIR CABRERA (hereinafter referred to as "CABRERA" or "DEFENDANT"), by and through the undersigned counsel, and hereby files this Memorandum Addressing the Impact of *Merk & Co., Inc. v. Reynolds* on the Subject Case Pursuant to Court Order Dated May 4, 2010, stating as follow:

A. **Procedural Background**

This action arises out of alleged misrepresentations made in connection with Defendants' marketing and sale of new homes to the Plaintiffs for investment purposes. Plaintiffs filed their initial Complaint on May 30, 2007. Plaintiffs filed a Second Amended Complaint, which is the operative Complaint in the above-captioned action, on October 31, 2008. The Second Amended Complaint alleges that through his participation, Cabrera, an employee and officer of D'Alessandro & Woodyard, Inc., and Gates, D'Alessandro & Woodyard, LLC, violated federal securities laws (Counts II, III, IV); violated the Interstate Land Sales Full Disclosure Act (Count V & VI); and violated the Florida Deceptive and Unfair Trade Practices Act (Count IX). Thereafter, the various Defendants named in the case filed Motions to Dismiss the Second Amended Complaint. On September 10, 2009, this Court issued an Opinion and Order on the Defendants' Motions to Dismiss. In relevant part, said Opinion and Order granted Defendants' Motions to Dismiss Counts I and II in their entirety, and Counts III and IV as to the Eshkenazi Plaintiffs, finding the claims to be barred by the applicable statutes of limitations. This Court found that Plaintiffs were on inquiry notice of the facts underlying their claims as of the dates they entered into the Purchase Agreements at issue in the lawsuit, that the statutory periods began to run as of those dates, and that the limitations periods expired before Plaintiffs filed their initial Complaint.

B. **Court Order Dated May 4, 2010**

On May 4, 2010, this Court entered an Order stating that it previously dismissed some of the securities violation claims of Plaintiffs' Second Amended Complaint on the basis of the statute of limitations, but that on April 27, 2010 the United States Supreme Court, in the case of *Merk & Co., Inc. v. Reynolds*, ___ S. Ct. ___, 2010 WL 1655827, abrogated the Eleventh Circuit "inquiry notice" standard utilized by this Court in its prior Order and Opinion [DE 290]. As

Case 2:07-cv-00343-JES-SPC Document 359 Filed 05/25/10 Page 3 of 8
Case No. 2:07-cv343-FTM 29 SPC

such, this Court ruled that the parties named in the security counts may file a memorandum addressing the impact of *Merk* on the subject case.

C.  *Merk & Co., Inc. v. Reynolds*

*Merk* involved a dispute over whether a complaint filed in a private securities fraud action under Sections 10(b) and 10b-5 of the 1934 Securities Exchange Act was timely. The Supreme Court cited 28 U.S.C. 1658(b)(1), providing that the limitations period does not begin to run until after the plaintiffs discover the facts constituting the violation. Construing such statute for the first time, the Supreme Court held that "a cause of action accrues (1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation'- whichever comes first." *Merk & Co., Inc. v. Reynolds*, ___ S. Ct. ___, 2010 WL 1655827 at *4. Such ruling is in line with that of the Eleventh Circuit in connection with such claims. However, contrary to the Eleventh Circuit, which held that the statute of limitations begins to run in the securities context when a plaintiff has actual or inquiry notice of a violation, namely, knowledge of facts that would lead a reasonable person to begin investigating the possibility that his legal rights had been infringed, the Supreme Court held that inquiry notice does not necessarily suffice to start the statute of limitations clock from beginning to tick. Specifically, the *Merk* Court stated that "[i]f the term "inquiry notice refers to the point where the facts would lead a reasonably diligent plaintiff to investigate further, that point is not *necessarily* the point at which the plaintiff would already have discovered facts . . . constituting the violation." *Id.* at *13. (emphasis added). The Court elaborated that "nothing in the text [of the statute] suggests that the limitations period can sometimes begin *before* 'discovery' can take place." *Id.* As such, the Court found that the "discovery" of facts that put a plaintiff on "inquiry notice" does not *automatically* begin the running of the limitations period. *Id.* at *14. (emphasis

- 3 -
COLE, SCOTT & KISSANE, P.A.
1645 PALM BEACH LAKES BOULEVARD - 2ND FLOOR - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-9977 FAX

added). Thus, the Court concluded that the limitations period in Section 1658(b)(1) begins to run once the plaintiff did discover, or a reasonably diligent plaintiff would have discovered, the facts constituting the violation- whichever comes first. *Id.* at *15. Thus, through *Merk*, the Supreme Court seemingly nullified the "inquiry notice" standard adopted by the Eleventh Circuit in connection with Section 10(b)/Rule 10b-5 claims. However, for the reasons stated below, such ruling does not affect this Court's rulings in its September 10, 2009 Opinion and Order in the above-captioned case.

**D.    Analysis of Count II of Plaintiffs' Second Amended Complaint in Light of *Merk***

Initially, the *Merk* holding is inapplicable to Count II of Plaintiffs' Second Amended Complaint for violation of Section 15(a) of the Securities Act. Importantly, *Merk* addresses only the statute of limitations for Section 10(b)/Rule 10b-5 claims. Being that the language relative to the statute of limitations applicable to Section 15(a) claims is distinguishable from that relevant to the statute of limitations for 10(b)/Rule 10b-5 claims, *Merk* cannot be deemed to be binding on Count II of the above-captioned case.

However, even if the *Merk* ruling and the standard articulated therein was applicable to Count II of the above-captioned case, Plaintiffs' claims would remain time-barred. Specifically, a reasonably diligent plaintiff would have discovered in March of 2005 (Eshkenazi Plaintiffs) and July of 2005 (Sewell Plaintiffs) the facts allegedly constituting violations, under the securities statutes at issue in the case, namely, the untrue statements. Significantly, during the above-referenced months, the Plaintiffs signed the Purchase Agreements at issue in the subject case. Such Purchase Agreements provided the following:

> XVI.: " ... Buyer further acknowledges that Builder/Seller has made no guarantees that relate to appreciation of the value of this home or any other real estate, to the rental rates or vacancy factor associated with any real estate, not to the ability to secure renters

> or subsequent buyers for this home or any other real estate. Buyer states that Buyer has conducted research and investigation and that the decision to purchase this home was not influenced in any party by statements made by Builder/Seller with regard to legal, tax or investment considerations..."

. . .

> XXVII(f): "Buyer warrants that no real estate broker, or real estate agent is involved with this transaction as a representative of the Builder/Seller. Any real estate broker or agent that may be involved is involved as a representative of the Buyer, and Builder/Seller may interact with Buyer's representative in the same manner as it would use to interact with the Buyer. Buyer's decision to purchase is based entirely upon Buyer's own investigation of the property and not upon oral representatives, or conduct, of the Builder/Seller or its own sales staff or agents."

. . .

> REAL ESTATE CERTIFICATION: "We the undersigned Builder/Seller and Buyer(s) involved in this real estate transaction certify individually and jointly, that the terms of this Agreement are true and correct to the best of our knowledge and belief, and that any other agreements entered into by any of these parties in connection with this transaction are attached to this Agreement."

Such Purchase Agreements are clearly in direct contradiction of the oral or other marketing-related promises Defendants allegedly made to Plaintiffs that they would provide them with tenants for their properties and guarantee a 14% return. Indeed, in its Order, this Court concluded that the disclaimers contained within the Purchase Agreements directly contradicted Plaintiffs' understanding of the investment opportunity based on Defendants' alleged promises underlying the alleged investment opportunity.

Importantly, the Purchase Agreements further stated the following:

> XIX.: "ORAL REPRESENTATIONS DISCLOSURE: All representations that are binding against Builder/Seller are to be in writing by an officer of Builder/Seller. Any oral representations made by the sales representative and/or loan officer(s) are deemed not made by, or binding on, or representative of, the Builder/Seller

unless made in writing and authorized by an officer of the Builder/Seller."

. . .

XXVII(g): "This Agreement constitutes the entire understanding and agreement between the Builder/Seller and Buyer. It is agreed to by both parties that all prior understandings and agreements are suspended by and are replaced by the provisions of this Agreement. Any representations, claims, statements, inducements, advertisements, brochures, promotional activities, maps or otherwise, made or presented by Builder/Seller, or Builder/Seller's agents, representatives or employees, shall have no force or effect unless expressly set forth in this Agreement."

Thus, the Purchase Agreements clearly stated that the provisions contained therein trumped any oral representations made by Defendants, as well as all prior understandings, agreements, statements, representations, advertisements, brochures, and promotional activities made by Defendants. Accordingly, Plaintiffs had clear knowledge that all prior representations regarding guaranteed tenants and 14% returns, which directly contradicted the above-referenced provisions providing for no guarantees of tenants or returns, were, or must have been, false. Thus, Plaintiffs discovered, or at minimum, should have discovered, the subject untrue statements at the time they signed the Purchase Agreements in March and July of 2005. Importantly, the claims in Count II of the Second Amended Complaint being brought under the Securities Act must be brought within 1 year after discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence. 15 U.S.C. § 77(m) (1997). Thus, it follows that Plaintiffs' Complaint filed on May 30, 2007 was filed beyond the statute of limitations and, therefore, must remain dismissed.

E.  **Analysis of Counts III and IV of Plaintiffs' Second Amended Complaint in Light of *Merk***

It is not necessary to analyze Counts III and IV of the Second Amended Complaint under the *Merk* standard. Importantly, this Court did not dismiss such claims of the Sewell Plaintiffs on the basis of the statute of limitations. Instead, the Court dismissed such claims on the ground that the Sewell Plaintiffs failed to properly plead that Defendants acted with scienter, as required to establish a 10b-5 violation. This Court's reasoning regarding the Sewell Plaintiffs' failure to sufficiently plead scienter is equally applicable to the Eshkenazi Plaintiffs. As such, the same result is required. Additionally, this Court dismissed Count IV because without establishing a 10b-5 violation, there can be no Section 20(a) controlling persons liability. Such basic law applies uniformly across the board. It follows from the above-discussion that the *Merk* decision does not alter the above-referenced conclusions.

## CONCLUSION

In conclusion, for the reasons outlined above, as well as for those articulated by the other Defendants named in the case, which Cabrera adopts to the extent applicable to him, the Supreme Court's decision in *Merk* does not impact this Court's dismissal of Plaintiffs' claims for violations of federal securities laws.

COLE, SCOTT & KISSANE, P.A.
1645 PALM BEACH LAKES BOULEVARD - 2ND FLOOR - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on May 25, 2010, we electronically filed the foregoing Agreed Motion for Enlargement of Time to Respond to Plaintiffs' Second Amended Complaint with the Clerk of Court by using the CM/ECF system, which will, in turn, send a notice of electronic filing to: **Daniel Wallach, Esq.**, Becker & Poliakoff, P.A, 311 Stirling Road, Ft. Lauderdale, Florida 33312 (*Plaintiff's counsel*); **Philip J. Snyderburn, Esq.**, Snyderburn, Rishoi & Swann, 258 Southhall Lane, Suite 420, Maitland, FL 32751 (*D'Alessandro & Woodyard, Inc.'s counsel*); **Jon D. Parrish, Esq.**, Parrish, Lawhon & Yarnell, P.A., 3431 Pine Ridge Road, Suite 101, Naples, FL 34109 (*Gates, D'Alessandro & Woodyard, LLC's counsel*); **Raquel M. Fernandez, Esq.**, Bilzin, Sumberg, Baena, Price & Axelrod, LLP, 200 S. Biscayne Boulevard, Suite 2500, Miami, FL 33131-5340 (*K. Hovnanian First Homes, LLC's counsel*); **Charles Wachter, Esq.**, Fowler, White, Boggs & Banker, PA, 501 E. Kennedy Boulevard, Suite 1700, Tampa, FL 33601-1438 (*First Home Builders of Florida's counsel*); **Ronald L. Buschbom, Esq.**, Conroy, Simberg, Ganon, Krevans & Abel, PA, 3440 Hollywood Boulevard, 2nd Floor, Hollywood, FL 33021 (*Honora Kreitner's counsel*); **Steven Douglas Knox, Esq.**, DLA Piper Rudnick Gray Cary US, LLP, 101 E. Kennedy Blvd., Suite 200, Tampa, FL 33602 (*Bruce Robb's counsel*); **Robert Pratte, Esq.**, DLA Piper Rudnick Gray Cary US, LLP, 90 South Seventh Street, Suite 5100, Minneapolis, Minnesota 55402.

    COLE, SCOTT & KISSANE, P.A.
    Attorneys for Defendant, Samir Cabrera
    1645 Palm Beach Lakes Blvd., 2nd Floor
    West Palm Beach, Florida 33401
    E-Mail: jonathan.vine@csklegal.com
    Telephone: (561) 383-9203
    Facsimile: (561) 683-8977

    By: s/S. Jonathan Vine
        JONATHAN VINE
        FBN: 010966

L:\0432-0016-00\P\MOTIONS\Memo re impact of Merck.doc